IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONAL McLEAN SNYDER, III, ET AL. § | | PLAINTIFFS |
| § | | |
| v. § | | CIVIL NO. 1:04CV627HSO-JMR |
| § | | |
| UNITED STATES OF AMERICA § | | DEFENDANT |

### ORDER AND REASONS DISMISSING CASE
### FOR LACK OF SUBJECT MATTER JURISDICTION

BEFORE THE COURT is Defendant's Motion to Dismiss, or, in the Alternative, for Summary Judgment and Plaintiffs' Motion for Summary Judgment on the Applicability of the Discretionary Function Exception to Waiver of Sovereign Immunity Under the Federal Tort Claims Act. Both motions have now been fully briefed and are ripe for resolution. After due consideration of the submissions and the relevant law, it is the opinion of the Court that Plaintiffs' claims, brought pursuant to the Federal Tort Claims Act ["FTCA"], specifically 28 U.S.C. §§ 1346(b), 2671-80, are not within the sovereign immunity waiver of the FTCA; therefore, this Court lacks subject matter jurisdiction. Plaintiffs' Motion for Summary Judgment must therefore be denied, the Defendant's Motion to Dismiss must be granted, and the above captioned cause should be dismissed pursuant to FED. R. CIV. P. 12(b)(1).

### I. FACTS AND PROCEDURAL HISTORY

The facts of this case originate during the time when Donal McLean Snyder, Jr., served as a First Lieutenant in the United States Marine Corps. Snyder and

his wife Pam were stationed at Camp LeJeune, North Carolina, from March through December of 1970. At that time, the Snyder family was relocated. A son, Donal McLean Snyder, III, was born the following January, 1971. Donal III was born with a congenital heart defect, known as bicuspid aortic valve ["BAV"]. Extensive medical treatment culminated in Donal III undergoing a heart valve replacement. The Snyders returned a second time to Camp LeJeune in July of 1971 and remained stationed there until October of 1972.

According to the Plaintiffs' Complaint, as a result of military personnel using degreasing agents to clean tanks and weapons on the base, toxic chemicals trichloroethylene ["TCE"] and tetrachloroethylene ["PCE'] contaminated the water system of Camp LeJeune. Plaintiffs claim that because TCE and PCE were disposed of by being poured into barrels and then directly onto the ground, these toxic chemicals seeped into the soil system resulting in contamination of the underground water supply at Camp LeJeune. Plaintiffs further claim that because Pam Snyder consumed the water from Camp LeJeune while she was pregnant with Donal III, she was exposed to TCE and PCE toxins which resulted in Donal III being born with the BAV congenital heart defect. Finally, Plaintiffs contend that because the Government failed to properly dispose of the waste materials and issued untimely and inadequate warnings, Donal III was also exposed to the chemicals in Camp LeJeune's water supply during his early childhood years.

Plaintiff, Donal McLean Snyder, III, together with his parents, Donal McLean Snyder, Jr., and Pam Snyder filed the above captioned cause pursuant to

the FTCA, alleging that the United States government is liable to them for damages associated with the BAV defect from which Donal III suffers. The operative Complaint in this case asserts the following tort claims against the United States, with the claims of the Snyder parents being derivative in nature: 1) that Defendant negligently maintained and/or protected the water supply at Camp LeJeune; 2) that Defendant acted with reckless disregard, to the point of being an intentional act, for the Plaintiffs' welfare; 3) that Defendant was grossly negligent in disregarding the welfare of Plaintiffs to the degree that such disregard amounted to an intentional act; 4) that Defendant breached its duty of care by failing to adequately oversee the water supply at Camp LeJeune; and 5) that Defendant intentionally inflicted emotional distress upon the Plaintiffs in connection with the negligent contamination of the water supply at Camp LeJeune. Ct. R. #4, Plaintiffs' Am. Compl. filed August 17, 2004.

    Defendant filed a Motion for Summary Judgment on February 22, 2006. Plaintiffs filed a collective response on March 23, 2006, followed by the Defendant's reply on April 3, 2006. Subsequent to the above captioned cause being reassigned to United States District Judge Louis Guirola, the Court entered an order denying Defendant's Motion for Summary Judgment but directing both parties to file Motions on the question of the Court's subject matter jurisdiction over this case, namely the issue of the applicability of the discretionary function exception to the FTCA. Ct. R. # 57, Op. at p. 3. The instant Motions were then filed by the Defendant and the Plaintiffs on March 23, 2007. Both parties have filed Responses

and the Defendant has filed a Rebuttal.  The above captioned cause was reassigned to the undersigned on May 21, 2007.

## II. DISCUSSION

### A. *The Court's Subject Matter Jurisdiction Over Tort Claims Against the United States*

Federal courts are courts of limited jurisdiction, *see* 13 CHARLES WRIGHT & ARTHUR MILLER, *Federal Practice and Procedure* § 3522 (1984), and must consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties.  The Court must dismiss any action if such jurisdiction is lacking. *See* FED. R. CIV. P. 12(h)(3); *Matter of Kutner,* 656 F.2d 1107, 1110 (5th Cir. 1981), *cert. denied,* 455 U.S. 945 (1982).  "[J]urisdiction goes to the core of the court's power to act, not merely to the rights of the particular parties.  If jurisdiction could be waived or created by the parties, litigants would be able to expand federal jurisdiction by action, agreement, or their failure to perceive a jurisdictional defect." *Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1297 (5th Cir. 1985).  "[W]hatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements. . . . [t]hat obligation is equally applicable to cases initially filed in federal court and cases removed from state court to federal court." *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 593 (2004).

Federal courts are without subject matter jurisdiction to hear suits against the United States unless there has been a waiver of sovereign immunity.  *See United States v. Sherwood,* 312 U.S. 584, 591 (1941).   The Federal Tort Claims Act,

enacted by Congress in 1946, is a limited waiver of sovereign immunity, making the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *See United States v. Orleans,* 425 U.S. 807 (1976).  The Federal Tort Claims Act generally removes the protection of sovereign immunity for the government in cases where government employees have caused damage by their negligence during the course of their employment.  *See Aretz v. United States,* 604 F.2d 417, 426 (5th Cir. 1979).

This waiver of sovereign immunity is subject to a number of exceptions, among them the discretionary function exception which makes the government immune from liability for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The applicability of the discretionary function exception involves a two-step analysis.  First, because the exception covers only acts that are discretionary in nature, there must be a determination of  whether the challenged act involves an element of "judgment or choice." *United States v. Gaubert,* 499 U.S. 315, 322 (1991); *Berkovitz v. United States,* 486 U.S. 531, 536 (1988).  This requirement is not satisfied if a federal statute, regulation or policy specifically prescribes the course of action that the government employee must follow, for in this situation the employee

" 'has no rightful option but to adhere to the directive.' " *Gaubert,* 499 U.S. at 322, *quoting Berkovitz v. United States,* 486 U.S. 531, 536 (1988).

Second, if the action involves a choice or judgment, then a determination must be made "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz,* 486 U.S. at 536.  The exception insulates government decisions based on social, economic, and public policy. *See id.* A government regulation giving government employees discretion "creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert,* 499 U.S. at 324.  "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.  By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took 'steps to protect the Government from liability that would seriously handicap efficient government operations.'" *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814 (1984), *quoting United States v. Muniz*, 374 U.S. 150, 163 (1963).

B. *Analysis of the Parties' Arguments*

Plaintiffs submit that the discretionary function exception does not apply since at the time they resided at Camp LeJeune, the following Naval Regulation was in place which they claim prescribed a specific course of action:

> "refuse, in any form, should not be disposed of where it may
> pollute surface or underground waters which are eventually
> to be used as drinking water."

The record reveals that this particular directive regarding disposal of refuse was published in the Manual of Naval Preventative Medicine in June of 1957: Ch. 8, § 15 Garbage & Refuse Disposal. See Ex. "A" to Pls.' Mot. for Summ. J. Plaintiffs contend that as a result of the Defendant violating this regulation, they sustained harm that was preventable. The Defendant argues that because the presence of TCE and PCE was not discovered at Camp LeJeune until the 1980's, there were no requirements in place during the relevant time period regarding the use and disposal of the chemicals used on the base.

The Defendant correctly points out that TCE and PCE were not regulated as toxic pollutants under the Clean Water Act until August 25, 1978, well after the time period relevant to this lawsuit. See 40 C.F.R. Part 403 (1978). The Environmental Protection Agency ["EPA"] did not regulate TCE or PCE as hazardous wastes under the Resource Conservation and Recovery Act ["RCRA"] until November 19, 1980. See 40 C.F.R. Part 261. The EPA did not regulate TCE or PCE as drinking water contaminants under the Safe Water Drinking Act until January 1989, and July 1992, respectively. See 52 Fed. Reg. 25,690 (July 8, 1987) and 56 Fed. Reg. 3,526 (Jan. 30, 1991); see also Exs. "10", "11", "12" and "13" att. to Def.'s Mot. for Summ. J. In short, there were no government regulations which specifically regulated TCE and PCE at the time Plaintiffs allege they were exposed to these chemicals.

Plaintiffs have not identified any other federal statute or rule in place during the relevant time period other than the aforementioned naval regulation. That regulation nowhere mentions TCE and PCE and addresses only "refuse" disposal in general. Nor does it offer any specific guidance regarding how to dispose of refuse, leaving to military personnel the determination of whether a particular disposal location would fall within the meaning of the phrase "where it [refuse] may pollute surface or underground waters." Therefore, this provision cannot be construed as a specific directive for handling the disposal of TCE and PCE during the time that Plaintiffs resided at or near Camp LeJeune. *See OSI, Inc. v. United States,* 285 F.3d 947, 953 (11th Cir. 2002)(agency manual which provides only objectives and principles for a government agent to follow does not create mandatory directive which overcomes the discretionary function exception to the FTCA. "The nature of the military's function requires that it be free to weigh environmental policies against security and military concerns. We hold that the decisions at issue here reflect the kind of judgment that the discretionary function exception is designed to shield.")

Due to the absence of any regulations specifically delineating how to dispose of TCE and/or PCE during the time of Plaintiffs' allegations, the Supreme Court and Fifth Circuit authorities discussing the discretionary function exception lead to the conclusion that the manner in which the Marine Corps decided to dispose of these chemicals during the time frame at issue fell within the definition of a discretionary function, rendering the Defendant immune from suit.

While the Fifth Circuit has authored opinions on the discretionary function exception to the FTCA, *supra.*, there have been no decisions addressing similar factual contexts to those presented here. The cases most factually analogous to this one derive from the Tenth Circuit in *Ross v. United States,* 129 Fed.Appx. 449 (10th Cir. 2005)[1] and *Aragon v. United States,* 146 F.3d 819 (10th Cir. 1998). In both cases, plaintiffs, landowners who lived adjacent to military installations, claimed that United States Air Force operations generated TCE contamination which polluted residential water wells.

In *Aragon,* the former Walker air military base in Roswell, New Mexico, was utilized during the period of 1942-1949 as a training ground for pilots and a subsequent strategic command post during the Korean War. Military personnel washed aircraft and aircraft engines on the base with TCE, a known degreasing agent commonly used by the military during that time. In 1967, the government deactivated the Walker Base. In 1991, the New Mexico Environmental Department detected TCE in plaintiffs' wells located near the east boundary of the facility. The Army Corp of Engineers subsequently identified the probable source of contamination at the base site. The *Aragon* plaintiffs filed claims with the Air Force for compensation, including diminution of property value, which were denied. Plaintiffs then filed suit against the United States under the FTCA, asserting the

---

[1]Unpublished opinions issued on or after January 1, 1996, have no precedential or binding value except under the doctrine of *res judicata. See* 5th CIR. R. 47.5.4. However, they may be cited if they have persuasive value with respect to a material issue that has not been addressed in a published opinion and the unpublished disposition would assist the court. *See id.*

same causes of action for diminution of property value and also for personal injuries, emotional distress and other related compensation. *See Aragon*, 146 F.3d at 822.

The Tenth Circuit affirmed the district court's dismissal of the claims for lack of subject matter jurisdiction based on the application of the FTCA discretionary function exception. Specifically, the Court found that the discretionary function exception to the FTCA precluded recovery, in that the Air Force had discretion regarding its handling and disposal of wastewater from its aircraft cleanup operations. The Court stated in part that "there is little doubt that the actions involved policy choices of the most basic kind. . . . [i]ndeed, the record makes clear the military recognized it needed flexibility to weigh its groundwater protection policies against broader public and military policies; thus it allowed the Air Force to place security and military concerns above any other concerns." *Id.* at 826.

The Plaintiffs in the present case raise an inadequate warning argument similar to that advanced by the plaintiffs in *Ross v. United States,* 129 Fed.Appx. 449 (10th Cir. 2005). There, after TCE was discovered in the groundwater of the homes in Tinker View Acres, adjoining Tinker Air Force Base in Oklahoma City, Oklahoma, Ross and other adjacent landowners brought suit under the FTCA against the federal government for creating a public and private nuisance when it generated hazardous waste on the base, and then allegedly allowed the waste to "permeate the groundwater and migrate to the residents' property." *Ross*, 129

Fed.Appx. at 450. The Ross plaintiffs argued that the pollution damaged their property values and could impact their health. They also asserted that the government issued untimely and inadequate warnings. The Tenth Circuit determined that the plaintiffs did "not specifically allege an absence of warning; rather, they argue that the warnings they did receive were 'untimely and inadequate.' Again, we agree with the district court that the policy choices surrounding the warnings given (or the delayed issuance thereof) are likewise shielded by the discretionary function exception." *Id.* at 451.

In the case *sub judice*, the timing of any disclosures regarding TCE and PCE contamination at Camp LeJeune would also implicate policy concerns that are "grounded in policy discretion and, as such, are shielded by the discretionary function exception to the FTCA." *Ross,* 129 Fed.Appx. at 452; *OSI, Inc. v. United States,* 285 F.3d 947, 952 (11th Cir. 2002); *Aragon v. United States,* 146 F.3d 819, 827 (10th Cir. 1998). Based on United States Supreme Court and Fifth Circuit precedents regarding the application of the general discretionary function exception, as well as the conclusions reached by the Tenth Circuit in cases with similar factual scenarios, this Court can only conclude that, at the time the Snyders were stationed at Camp LeJeune, no specific directive controlled the military's discretion in disposing of or providing warnings about TCE and PCE. The actions of which Plaintiffs complain can only be classified as ones involving judgment or choice, placing them within the discretionary function exception of the FTCA. The

authorities cited herein make it clear that these types of decisions by the military regarding operations at Camp LeJeune were the kinds of government policy choices the discretionary function exception was designed to shield.  As such, the Defendant has not waived sovereign immunity under the facts of this case, and the Court therefore lacks subject matter jurisdiction to hear the Plaintiffs' claims.

### III. CONCLUSION

The facts and circumstances of this case are most unfortunate, however this Court cannot assume jurisdiction where none exists.  The Fifth Circuit in considering the discretionary function exception to the Federal Tort Claims Act has repeatedly held that challenges to the Court's jurisdiction are properly treated as Motions to Dismiss under FED. R. CIV. P. 12(b)(1).  *See ALX El Dorado, Inc. v. Southwest Sav. and Loan Association/FSLIC,* 36 F.3d 409, 410 (5th Cir. 1994), *citing McNeily v. United States,* 6 F.3d 343, 347 (5th Cir. 1993); *Davis v. U.S.,* 961 F.2d 53, 57 (5th Cir. 1991).  After careful consideration of the pleadings filed in this case and the history of the parties' litigation of this issue, it is the opinion of the Court that Plaintiffs' Complaint is barred by the FTCA's discretionary function exception.  Defendant's Motion to Dismiss must therefore be granted.  Accordingly,

**IT IS, ORDERED AND ADJUDGED**, that, pursuant to FED. R. CIV. P. 12(b)(1), the above captioned cause is dismissed for want of subject matter jurisdiction.

**IT IS, FURTHER ORDERED AND ADJUDGED**, that all remaining pending motions are hereby **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED** this the 1st day of August, 2007.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE